UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY COOPER,

                Plaintiff,

-against-

ALLIED BARTON SECURITY
SERVICES and NEW YORK CITY
DEPT. OF CITYWIDE
ADMINISTRATIVE SERVICES,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**

08 Civ. 10669 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff initiated this pro se action on December 9, 2008, by filing a complaint against his employer, Allied Barton Security Services ("Allied Barton"), and the New York City Department of Citywide Administrative Services ("DCAS"), a city agency that contracts with Allied Barton for security services. Plaintiff alleges that he was the victim of employment discrimination because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1] (Docket No. 2) Plaintiff amended his complaint on December 30, 2008 (Docket No. 3), and on August 24, 2009 the Court granted Plaintiff leave to file a Third Amended Complaint. (Docket No. 29)

        Plaintiff alleges that he was terminated from his position as a security guard at One Center Street, a City property where he was assigned as a security guard,

---

[1] Plaintiff filed a complaint with the EEOC on August 29, 2008. On October 28, 2008, the EEOC issued Plaintiff a right to sue letter. (See exhibits attached to Third Am. Cmplt.) Plaintiff timely filed the instant action within ninety days of receiving the right to sue letter. (Docket No. 2)

because of his race, and that Defendants' proffered reasons for his termination are a pretext for discrimination. (Third Am. Cmplt. ¶ II.A)

On October 9, 2009, DCAS filed a motion for summary judgment concerning Plaintiff's Third Amended Complaint. (Docket No. 33) On November 10, 2009, Allied Barton filed a separate motion for summary judgment, making substantially the same arguments for dismissal as DCAS. (Docket No. 38) Because Cooper has offered no evidence in support of his claim that he was discriminated against because of his race, Defendants' motions are GRANTED.

## BACKGROUND

Plaintiff Gary Cooper began working at One Center Street as a security guard in September 2005. (DCAS Rule 56.1 Stat. ¶ 19)[2] At that time he worked for Tristar Security Services, the security company the City had contracted to provide security services at One Center Street. (Id. ¶¶ 19-20) On about December 1, 2006,

---

[2] To the extent that this Court relies on facts drawn from Defendants' Rule 56.1 statement, it has done so because Plaintiff has either not disputed those facts or has not done so with citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted). Where Plaintiff disagrees with Defendants' characterization of the cited evidence, and has presented an evidentiary basis for doing so, the Court relies on Plaintiff's characterization of the evidence. Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion).

Because Plaintiff is proceeding pro se, has not submitted a formal Rule 56.1 Statement, and has provided few citations to admissible evidence, the Court has conducted an independent review of the evidence in the record, and cites to this evidence where appropriate. The Court is entitled to rely on "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" under Fed. R. Civ. P. 56. The Court has considered only evidence that would be admissible at trial, however. Feingold v. New York, 366 F.3d 138, 155 n.17 (2d Cir. 2004). To the extent Plaintiff has offered statements in support of his claims that would not be admissible at trial, they have not been considered.

Defendant Allied Barton entered into a contract with the City of New York and replaced Tristar in providing security services at One Center Street. (Id. ¶ 17) Pursuant to this contract, Allied Barton security guards provide services to multiple City buildings throughout New York City. (Id. ¶ 18) On about January 1, 2006, Plaintiff was hired by Allied Barton to continue in his post as a security guard at One Center Street. (Allied Barton Rule 56.1 Stat. ¶ 1) Plaintiff worked at One Center Street as a security guard throughout his employment with Allied Barton. (Allied Barton Rule 56.1 Stat. ¶ 2) As a security guard, Plaintiff was responsible for ensuring that no unauthorized persons entered the One Center Street building. (Id. ¶ 3)

At the outset of his employment with Allied Barton, Plaintiff was given a copy of Allied Barton's Security Officer Handbook, and signed a form acknowledging that he was responsible for knowing the rules contained within the handbook. (Id. ¶ 4; Linn Dec., Ex. D) The Handbook states that Allied Barton employees may not sleep on the job and may face termination if they do so. (Id. ¶ 5) The Handbook also explains that employees may report concerns about harassment and unfair discipline to Allied Barton Management. (Id. ¶ 6) During his employment with Allied Barton, Plaintiff received paychecks directly from Allied Barton (DCAS Rule 56.1 Stat. ¶ 24), and he was supervised by Allied Barton managers. (Id. ¶ 25)

In April 2008, Plaintiff was found asleep at his post at One Center Street. (Allied Barton Rule 56.1 Stat. ¶ 7) Plaintiff testified that he fell asleep or nodded off at his post between five and ten times. (Id. ¶ 8) Allied Barton supervisor Kelly Mechaley met with Plaintiff after hearing reports of Plaintiff sleeping at his post and informed him that if he fell asleep again at work his employment would be terminated. (Id. ¶ 9) By

3

July 2008, DCAS employee and special officer Scott Aronsen had observed Plaintiff sleeping at his post on three separate occasions.  He spoke with Plaintiff and his supervisor about each of these incidents, and in July 2008, he reported the last of the three sleeping incidents to Kelly Mechaley.  (DCAS Rule 56.1 Stat. ¶ 26-27; Allied Barton Rule 56.1 Stat. ¶ 10)  Ms. Mechaley subsequently spoke with Plaintiff, who at the time did not dispute the allegation that he had fallen asleep at his post.  (Id. ¶ 12)  Ms. Mechaley decided to terminate Plaintiff's employment and presented him with a termination form stating that the reason for this decision was that he fell asleep on the job.  Plaintiff did not indicate any disagreement with this decision and signed the form.  (Id.)

Plaintiff alleges that DCAS employee Aronsen once said that "Black people are a pain in the ass," and stated that he would have Plaintiff fired.  (Pltf. Dep. at 70, 88; Third Am. Cmplt.)  Plaintiff testified that this was the only racist statement he heard during his assignment at One Center Street.  (Pltf. Dep. at 70, 88)  Plaintiff further testified that Aronsen harassed him by complaining about Plaintiff's work performance, but conceded that Aronsen harassed multiple people of different races regarding their job functions.  (Id. at 59, 107)  Plaintiff testified that Aronsen had a different work schedule and that he only saw Aronsen a few minutes per day.  (Id. at 27, 107)

Plaintiff also argues that he was treated unfairly by DCAS because his employment was terminated and no one cared about his feelings.  Plaintiff further complains that he should have received a grievance letter in some form.  (Id. at 98, 101)  Plaintiff is not aware of any other Allied Barton employees who received a grievance letter prior to termination, however.  (Id. at 99)

4

Finally, Plaintiff argues that the City denied him due process because he was not made aware of the contract between Allied International Union and Allied Barton. (Third Am. Cmplt. ¶ E)  The City is not a party to this collective bargaining agreement, however. (DCAS Rule 56.1 Stat. ¶ 37; Linn. Decl., Ex. H)

## DISCUSSION

### I.   LEGAL STANDARDS

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Whether facts are material is a determination made by looking to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether "[a] dispute about a genuine issue exists" depends on whether "the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (internal quotation marks omitted). Courts "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as in the current case, "the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The non-movant "cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts,'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)), and "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)). See also Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.")

While the submissions of a pro se plaintiff should be liberally construed, Nealy v. U.S. Surgical Corp., 587 F. Supp. 2d 579, 583 (S.D.N.Y. 2008), a pro se plaintiff is not excused from meeting the evidentiary standards required to defeat a motion for summary judgment. See Hare v. Hoveround Corp., No. 06 Civ. 1081 (NAM)(GHL), 2009 WL 3086404, at *2 (N.D.N.Y Sept. 23, 2009) (citing Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)); Dipilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 343 (S.D.N.Y. 2009) (quoting Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment")(internal citations omitted)).

District courts must be cautious in granting summary judgment in employment discrimination cases, because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication."

Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (citing Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nevertheless, it "is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation") (internal quotation marks omitted).

   The Court must take a "totality of the circumstances approach" and look to "the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff,'" Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000), including "not only reported acts of harassment committed against a plaintiff, but also unreported incidents of harassment." Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 441 (S.D.N.Y. 2009) (citing Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998) ("[T]he fact that the incidents were or were not reported is irrelevant to a determination of whether or not a hostile environment existed.")). The Court may also consider the treatment of a plaintiff's coworkers. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) ("[A] plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim."); Schwapp v. Town of Avon, 118 F.3d 106, 111-12 (2d Cir. 1997) (plaintiff's second-hand knowledge of racially derogatory comments or jokes can impact work environment).

Under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff asserting racial discrimination bears the initial burden to establish a prima facie case of discrimination. The burden then shifts to the employer to articulate "a legitimate, non-discriminatory reason" for the employment action. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000). "Once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, the presumption raised by the prima facie case is rebutted and drops from the case." Id. The plaintiff "must [then] be afforded the opportunity to prove, by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. at 143 (internal quotations omitted). "[T]he test for summary judgment is [ultimately] whether the evidence can reasonably support a verdict in plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

As an initial matter, employment discrimination claims under Title VII require a showing that the conduct complained of occurred because of a plaintiff's membership in a protected class. A plaintiff is a member of a protected class if he is discriminated against because of his "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2; see Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318-19 (2d Cir. 1999). Abusive conduct in the workplace for reasons other than a plaintiff's membership in a protected class is not actionable.

## II.   PLAINTIFF FAILS TO STATE A PRIMA FACIE CASE OF RACE DISCRIMINATION

In order to establish a prima facie case of employment discrimination, a plaintiff must "introduce[] evidence that raises a reasonable inference that action taken by

[his] employer was based on an impermissible factor." Stofsky v. Pawling Cent. Sch. Dist., 635 F. Supp. 2d 272, 297 (S.D.N.Y. 2009). A prima facie case requires that the plaintiff show: (1) he was a member of a protected class; (2) he was qualified for his position or his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001); Stratton v. Department for the Aging, 132 F.3d 869 (2d Cir.1997) (citing McDonnell Douglas, 411 U.S. at 802).

A plaintiff may establish discriminatory intent through direct or circumstantial evidence. Where no direct or circumstantial evidence of discriminatory intent is available, a plaintiff may allege, as Plaintiff does here, a claim of disparate treatment to sustain his discrimination claims. "A showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). "A plaintiff relying on disparate treatment evidence 'must show []he was similarly situated in all material respects to the individuals with whom []he seeks to compare h[im]self.'" Id. (quoting Graham, 230 F.3d at 39).

No reasonable jury could infer discriminatory intent from the facts before this Court. As an initial matter, Plaintiff testified at his deposition that he repeatedly fell asleep on the job (Linn Decl., Ex. C at 44:12-23); therefore, he cannot be said to have performed his job duties in a satisfactory manner. Roge, 257 F.3d at 168. Moreover, as

9

to Allied Barton, there is no evidence that any Allied Barton employee displayed racial animus or that Plaintiff's race played any role in Allied Barton's decision to terminate Plaintiff's employment. There is no evidence in the record that rebuts Kelly Mechaley's declaration stating that Plaintiff did not dispute – at the time of his termination – that he had fallen asleep on the job the night before. (Mechaley Decl. at 3) Indeed, Plaintiff testified at his deposition that he never told anyone at Allied Barton that he had not been sleeping on the job the night before his termination. (Linn Decl., Ex. C at 30-32) Similarly, there is no evidence in the record rebutting Mechaley's sworn statement that "the decision to terminate Cooper's employment was mine" and that Aronsen played no role in that determination. (Mechaley Decl. at 3)

While Plaintiff does allege that DCAS employee Scott Aronsen made a racist statement, Allied Barton –not DCAS – was Plaintiff's employer (Gift Decl.) and Aronsen had no supervisory authority over Plaintiff. (Aronsen Decl., ¶ 5). Moreover, as noted above, there is no evidence that disputes Mechaley's declaration that Aronsen played no role in her decision to terminate Plaintiff's employment. Given that Plaintiff had fallen asleep on the job before, had been warned that such conduct could lead to termination, and did not dispute at the time that he had in fact fallen asleep on the job again, there is no reason to distrust Mechaley's declaration that she terminated Plaintiff's employment because of his repeated acts of falling asleep on the job. (Mechaley Decl. at 3-4)

Plaintiff has likewise provided no evidence that similarly situated employees were treated differently because of race. "[W]here a plaintiff seeks to make out [his] prima facie case by pointing to the disparate treatment of a purportedly similarly

10

situated employee, the plaintiff must show that []he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated . . . . [S]uch an employee must be similarly situated in all <u>material</u> respects – not in <u>all</u> respects." <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53-54 (2d Cir. 2001) (internal citation omitted).

"Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is 'minimal.' However, [Plaintiff] has not met even this low threshold, because the circumstances of his termination do not give rise to or support an inference of discrimination or retaliation." <u>Collins v. N.Y. City Transit Auth.</u>, 305 F.3d 113, 118 (2d Cir. 2002)(citing <u>McGuinness</u>, 263 F.3d at 53) Plaintiff mentions discrimination related to race only once in his opposition briefs. In his DCAS opposition brief, he claims that Scott Aronson told him that "black people are a pain in the ass." (DCAS Op. ¶ 4) In his brief opposing Allied Barton's summary judgment motion, Plaintiff does not mention race at all in connection with his argument that he was the victim of discrimination.

Plaintiff's Third Amended Complaint likewise makes no mention of race. Only in an unsworn, typed statement attached to the Complaint (<u>see</u> attachments to Third Am. Cmplt.) does Plaintiff mention Scott Aronson's alleged remark that "black people are a pain in the ass." In this statement, Plaintiff also asserts that "Allied Barton ha[s] been discriminating against African American security officers." (<u>Id.</u>) At his deposition, Plaintiff testified that Aronson's remark was the only racist comment he heard during his employment at One Center Street (Pltf. Dep. at 70:16-23). Plaintiff further testified that Aronson had harassed several people of different races for <u>work</u>-related reasons. (<u>Id.</u> at

11

59: 24-60:3) Indeed, Plaintiff's own explanation for "why [he] was targeted" has nothing to do with race: Plaintiff alleges that he was "targeted" "because the City of New York and Allied Barton and Local 32BJ w[ere] part of [a] conspiracy to get rid of Former Tristar Guards." (Pltf. Resp. to DCAS Rule 56.1 Stat. ¶ 35)

Plaintiff argues that "DCAS, DOT and other city agencies have practice[d] harassment, intimidation, discrimination, and retaliation that's always aided and abetted by security companies," and that "Allied Barton has always practiced discrimination." (Pltf. Allied Barton Op. ¶ 6) Plaintiff's conclusory, unsupported allegations of discrimination – even if they had mentioned race– simply do not suffice to raise the required "inference of discriminatory intent." Roge, 257 F.3d at 168; see also Lizardo, 270 F.3d at 104 (plaintiffs cannot simply "cite to their mistreatment and ask the court to conclude that it must have been related to their race"); Boyd v. Presbyterian Hosp., 160 F. Supp. 2d 522, 535 (S.D.N.Y. 2001) ("plaintiff cannot defeat summary judgment . . . by asserting mere conclusory allegations of discrimination"). This Court will not infer that incidents about which Plaintiff complains constitute unlawful discrimination simply because they happened and Plaintiff is African-American. Okon, 2008 WL 2245431, *11 (citing Alfano, 294 F.3d at 378) (holding that a "[p]laintiff's complaints concerning unfair disciplinary actions, shift changes, uncompensated hours, his termination, and [supervisor's] comment concerning his fiancé do not demonstrate a hostile work environment on the basis of plaintiff's sex[, because] Plaintiff's allegations are on the whole sex neutral. While the Court must consider the 'totality of the circumstances,' there must be some circumstantial or other basis for inferring that these incidents were in

fact discriminatory.")  Accordingly, Plaintiff's race discrimination claim must be dismissed.[3]

### III. PLAINTIFF HAS NOT DEMONSTRATED THAT THE REASON FOR TERMINATING HIS EMPLOYMENT WAS A PRETEXT FOR UNLAWFUL DISCRIMINATION

Defendants also argue that "[e]ven if Plaintiff could establish a prima facie case of discrimination, his claim would still be subject to summary judgment because he cannot demonstrate that Allied Barton's legitimate, non-discriminatory reason for his termination was mere pretext for unlawful discrimination." (Allied Barton Br. at 7; DCAS Br. at 10)  Allied Barton's legitimate, non-discriminatory reason for terminating Cooper's employment is that he fell asleep at his post on multiple occasions.  (Id. at 7)  This is a valid, legitimate, and non-discriminatory basis for dismissing a security guard.

---

[3]  To the extent Plaintiff's Complaint could be read as asserting a claim for hostile work environment, that claim also fails.  To make out a prima facie claim of discrimination based on a hostile work environment, a plaintiff must demonstrate "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the [defendant]."  Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (internal quotation marks omitted).

Plaintiff has not offered evidence supporting a hostile work environment claim.  Indeed, Plaintiff has failed to offer evidence that any of the adverse actions he experienced at work were related to his race.  "[O]bviously self-serving and wholly unsubstantiated conjecture does not justify advancing this case to the trial stage."  Stofsky v. Pawling Cent. Sch. Dist., 635 F. Supp. 2d 272, 294 (S.D.N.Y. 2009) (citing McPherson v. New York City Dept. of Education, 457 F.3d 211, 215 n.4 ("[S]peculation alone is insufficient to defeat a motion for summary judgment.")).  While it is undisputed that Plaintiff belongs to a protected class, he is still required to demonstrate that a material question of fact exists as to whether his treatment related to his membership in that class.  "For racist comments, slurs, and jokes to constitute a hostile work environment, there [generally] must be more than a few isolated incidents of racial enmity. . . ."  Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (internal citation and quotation marks omitted).  There is simply no evidence here that Plaintiff's workplace was permeated with discriminatory intimidation.

13

Plaintiff was previously found and photographed sleeping at his post. He was warned that further instances of sleeping on the job would result in his termination. Kelly Mechaley of Allied Barton then terminated Plaintiff's employment based on another instance of him sleeping on the job, which she documented at the time. (Linn Decl., Ex. B & F; Hirschklau Decl., Ex. J) Allied Barton's Security Officer Handbook makes clear that "[s]leeping or dozing while on duty" "will result in disciplinary action" (Linn Decl., Ex. E at 13-14), and that such conduct is entirely incompatible with "the basic functions of an Allied Barton [security] officer":

> **DETER**: to serve as a general security presence and visible deterrent by continually performing your duties in an alert, professional manner.
>
> **DETECT**: suspicious activities.
>
> **OBSERVE**: criminal acts or rule infractions at or near your post which may be a threat to the facility, the client or employees at your work site.
>
> **REPORT**: all incidents, accidents or medical emergencies to the appropriate persons including your supervisor, in a timely manner.

(Linn Dec., Ex. E at 5). An officer asleep at his post cannot perform these job functions.

Plaintiff does not dispute that he fell asleep or dozed off while at work. (Linn Decl., Ex. C at 44:12-23) He likewise has offered no proof of pretext and no evidence that his termination related in any way to his race. See Fisher v. Vassar College, 70 F.3d 1420, 1433 (2d Cir. 1995) (explaining that, to establish pretext, the plaintiff must show both that the reason was false and that discrimination was the real reason). Accordingly, even if this Court were to find that Plaintiff had made out a prima

facie case of race discrimination under Title VII, his claims would nevertheless require dismissal.

## IV.     PLAINTIFF'S ADDITIONAL CLAIMS

To the extent Plaintiff's Third Amended Complaint could be read to assert a due process claim based on the terms of a collective bargaining agreement between Allied Barton and Allied International Union, any such claim fails for two reasons. First, Allied International Union was not the collective bargaining representative for Allied Barton employees at the time of Plaintiff's termination; that union had been replaced by the Service Employees International Union, Local 32BJ. (Linn Decl., Ex. C at 50-51) Accordingly, the collective bargaining agreement between Allied Barton and Allied International Union was not in effect at the time of Plaintiff's termination. Second, DCAS was never a party to the collective bargaining agreement cited by Plaintiff and is not, accordingly, bound by its terms. (Pltf. Allied Barton Op., Ex. A)

## CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment (Docket Nos. 33 & 38) are GRANTED. The Clerk of the Court is directed to terminate these motions and to close this case. Any other pending motions are moot.

Dated: New York, New York  
   July 8, 2010

SO ORDERED.

_____  
Paul G. Gardephe  
United States District Judge

Copy To:

Gary Cooper  
2345 Dean Street  
Brooklyn, NY  
11233